[Civ. No. 3759. Third Appellate District.—April 15, 1929.]

PUGH–MILLER DRILLING COMPANY (a Corporation), Respondent, v. MAIN OIL COMPANY OF CALIFORNIA et al., Appellants.

298

Leslie H. Kranz for Appellants.

Burke, Camarillo & Herron for Respondent.

FINCH, P. J.—The plaintiff was given judgment against all the defendants for the amount of two promissory notes for $1500 and $750, respectively, executed by the Main Oil Company and indorsed by the members of its board of directors, and also against the Main Oil Company alone for the further sum of $1250 for the hire of an oil-well drilling machine, being at the rate of $50 a day from March 27 to April 21, 1925. The defendants Main Oil Company, Leonards, Minor and Allen have appealed from the judgment.

There is no conflict in the evidence relating to the execution and indorsement of the promissory notes or the use by the Main Oil Company of the drilling machine at the alleged rate per day. The defendants resisted payment of the plaintiff's demands on three grounds: 1. That the promis-

sory notes were obtained by duress; 2. That H. L. Ball and C. C. Boatright, and not the plaintiff, were the real parties in interest; 3. That the corporation defendant was entitled to a credit of $3,983.51 for the cost of replacements made by it on the drilling machine.

The machinery in question was sold by the plaintiff to Ball and Boatright on a conditional sale or lease contract. Thereafter the purchasers entered into a contract to drill a well ·for the corporation defendant. They entered upon the work and· after it had been in progress for some time, the plaintiff made demand upon Ball and Boatright for payments which had become due and stated, in the presence of one of defendants, a director of· the Main Oil Company, that if payment was not made the plaintiff would take possession of the machinery under the terms of the sale contract and remove it. In order to prevent the removal of the machinery, the defendants paid the plaintiff $1,000 "on the instruction of Ball and Boatright," gave the promissory notes in suit, and agreed to pay the plaintiff "a rental of $50 a day" for subsequent use of the machinery "for the account of Ball and Boatright."

██ Appellants contend that the plaintiff demanded that the defendants agree to make payments for Ball and Boatright, under their contract to purchase, with the alternative of the removal of the machinery; that "a cessation of the work at that juncture would have been disastrous"; and that such conduct on the part of the plaintiff "amounted to duress." Mr. Pugh testified that he made a demand for payment on Ball and Boatright, but not on the defendants. Plaintiff had the right, under its contract with Ball and Boatright, to take possession of the machinery in the event of their default. "It is not legal duress to threaten or actually to take advantage of the usual remedy by suit for the enforcement of a debt or obligation. . . . Standing upon one's legal rights for the protection thereof cannot be recognized as coercion, intimidation or undue influence of any other person." (6 Cal. Jur. 67.)

██ There is no evidence whatever to support the appellants' second contention that the plaintiff is not the real party in interest. The uncontradicted evidence shows that the plaintiff agreed to sell the machinery to Ball and Boatright on the terms herein set forth and that the payments

which the defendants made and agreed to make to the plaintiff were in satisfaction of a *bona fide* indebtedness of Ball and Boatright to the plaintiff.

The defendants introduced evidence to the effect that the plaintiff impliedly agreed to credit the Main Oil Company with its expenditures for necessary replacement of parts of the machinery. The plaintiff's witnesses testified to the contrary. The defendants also produced evidence tending to show that it is the custom in the oil-fields for the owner of the machinery in such a case to pay for replacements. Pugh testified that the custom is that "the man who hires the rig always keeps it up." Leaving out of consideration the fact that the plaintiff did not lease the machinery to the Main Oil Company, but to Ball and Boatright, and they to the defendant company, and treating the whole arrangement as a hiring of the machinery by the oil company from the plaintiff, the following sections of the Civil Code are controlling:

"1955. One who lets personal property must deliver it to the hirer, secure his quiet enjoyment thereof against all lawful claimants, put it in a condition fit for the purpose for which he lets it, and repair all deteriorations thereof not occasioned by the fault of the hirer and not the natural result of its use.

"1956. A hirer of personal property must bear all such expenses concerning it as might naturally be foreseen to attend it during its use by him. All other expenses must be borne by the letter.

"1957. If a letter failed to fulfill his obligations, as prescribed by section nineteen hundred and fifty-five, the hirer, after giving him notice to do so, if such notice can conveniently be given, may expend any reasonable amount necessary to make good the letter's default, and may recover such amount from him."

Under the provisions of these sections, before the hirer can recover from the letter the amount expended for repairs it must be shown that the letter had failed to make such repairs, after having been given reasonable notice to do so. (*McFayden* v. *Town of Calistoga*, 74 Cal. App. 378, 384 [240 Pac. 523].) No such showing was made in this case.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.